1   PETER M. HART (State Bar No. 198691)
    hartpeter@msn.com
2   AMBER S. HEALY (State Bar No. 232730)
    ahealy.loph@gmail.com
3   **LAW OFFICES OF PETER M. HART**
    12121 Wilshire Blvd, Suite 205
4   Los Angeles, California 90025
    Telephone: (310) 478-5789
5   Facsimile: (509) 561-6441

6   Attorneys for Plaintiffs Gary Minor and Banipal Shabaz,
    Narek Eloyan, Shehan Bederian, Michael Macias

7   *Additional Plaintiffs' counsel are listed on the following page

8

9

10                  **UNITED STATES DISTRICT COURT**

11                 **NORTHERN DISTRICT OF CALIFORNIA**

12  GARY MINOR and BANIPAL SHABAZ, as      | Case No. C 09-01375 TEH
    individuals and on behalf of all others similarly
13  situated,

14              Plaintiffs,                  **NOTICE OF MOTION AND MOTION FOR
                                             PRELIMINARY APPROVAL OF CLASS
15              vs.                          ACTION SETTLEMENT; MEMORANDUM
                                             OF POINTS AND AUTHORITIES IN
16  FEDEX OFFICE AND PRINT SERVICES,        SUPPORT THEREOF**
    INC., a corporation, and DOES 1 through 50,
17  inclusive,                              **Date:         November 5, 2012
                                            Time:          10:00 A.M.
18              Defendants.                 Courtroom:     12**

19

20

21

22

23

24

25

26

27

28

                                      1

1  **ADDITIONAL PLAINTIFFS' COUNSEL:**

2  ERIC HONIG (State Bar No. 140765)
   LAW OFFICE OF ERIC HONIG
3  P.O. Box 10327
   Marina del Rey, California 90295
4  Telephone:  (310) 314-2603
   Facsimile:  (310) 314-2793
5  erichonig@aol.com

6  KENNETH H. YOON (State Bar No. 198443)
   kyoon@yoonlaw.com
7  STEPHANIE E. YASUDA (State Bar No. 265480)
   syasuda@yoon-law.com
8  LAW OFFICES OF KENNETH H. YOON
   One Wilshire Blvd., Suite 2200
9  Los Angeles, California 90017
   Telephone: (213) 612-0988
10 Facsimile: (213) 947-1211

11 LEVIK YARIAN (State Bar No. 213818)
   lyarian@ypllp.com
12 ALLEN PATATANYAN (State Bar No. 210586)
   apatatanyan@ypllp.com
13 YARIAN & PATATANYAN, LLP
   1511 W. Glenoaks Boulevard
14 Glendale, California 91202
   Telephone:  (818) 543-7075
15 Facsimile:  (818) 543-3271

16 MICHAEL GOULD (State Bar No. 151851)
   michael@wageandhourlaw.com
17 AARIN A. ZEIF (State Bar No. 247088)
   aarin@wageandhourlaw.com
18 GOULD & ASSOCIATES
   17822 East 17th Street, Suite 106
19 Tustin, California  92780
   Telephone:  (714) 669-2850
20 Facsimile:  (714) 544-0800

21 Attorneys for Plaintiffs Gary Minor, Banipal
   Shabaz, Narek Eloyan, Shehan Bederian,
22 and Michael Macias

23

24

25

26

27

28

2

**TO THE COURT AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE THAT** on November 5, 2012 at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Thelton E. Henderson, United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Gary Minor, Banipal Shabaz, Narek Eloyan, Shehan Bederian, and Michael Macias, as individuals and as the representatives of the Class ("Plaintiffs") will and hereby does respectfully move the court for preliminary approval of the proposed class action settlement.

Specifically, Plaintiffs respectfully request that the Court (1) grant preliminary approval for the proposed class action settlement; (2) authorize the mailing of the proposed notice to the class of the settlement; and (3) schedule a "fairness hearing," i.e. a hearing on the final approval of the settlement.

Plaintiffs makes this motion on the grounds that the proposed settlement is within the range of possible final approval, and notice should, therefore, be provided to the class. This Motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, the Memorandum of Points and Authorities in Support Thereof, the Declarations of Peter M. Hart (with the Joint Stipulation of Settlement signature pages to follow), Kenneth H. Yoon, Levik Yarian, Allen Patatanyan, and Michael Gould, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

DATED:  September 28, 2012                 LAW OFFICES OF PETER M. HART


                                           By: _____/s/ Peter M. Hart_____
                                                  Peter M. Hart
                                           Attorney for Plaintiffs and Class Counsel

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (3:09-CV-01375-TEH)

# TABLE OF CONTENTS

I.   INTRODUCTION ...........................................................................................................1

II.  SUMMARY OF SETTLEMENT TERMS........................................................................1

III. HISTORY OF THE LITIGATION ................................................................................3

    A.  Summary of Events from 2009 ...........................................................................3

    B.  Summary of Events from 2010 ...........................................................................4

    C.  Summary of Events from 2011 ...........................................................................5

    D.  Summary of Events from 2012 ...........................................................................6

IV. LEGAL ANALYSIS ........................................................................................................6

    A.   The Class At Issue And The Settlement Fund ......................................................6

    B.   Two-Step Approval Process ................................................................................7

    C.   The Standard For Preliminary Approval...............................................................8

    D.   Procedures For Settlement Before Class Certification ...........................................9

    E.   The Settlement Is Fair, Reasonable And Adequate ..............................................10

        1.   The Settlement May be Presumed Fair and Reasonable...............................10

            a.   Arms-Length Bargaining ...............................................................11

            b.   Investigation and Discovery Prior to Settlement ......................................12

            c.   Experience of Class Counsel ..........................................................13

        2.   The Settlement is Fair, Reasonable and Adequate.........................................14

            a.   The Settlement Is Fair and Reasonable Given Maximum Potential Recovery and Accompanying Risks of Continued Litigation ..................14

                i.   Overtime Wages........................................................14

                ii.  Labor Code § 226.7..................................................15

                iii. Vacation Wages .......................................................15

                iv. Reasonableness Given the Type of Employment ...............................16

                v.   Reasonableness Given the Risks of Continued Litigation..................17

            b.   The Settlement is within the range of reasonableness ...............................17

             c.   The complexity, expense, and likely duration of continued litigation

i

against the settling defendant favors approval ........................................... 18

      d.  Non-admission of Liability by Defendant ................................... 19

      e.  This Lawsuit Has As A Matter of Public Policy Educated the Company and Employees .......................................................... 19

F.    The Proposed Settlement Class Satisfies The Elements For Certification ........... 19

    1.  Numerosity ................................................................................. 19

    2.  Ascertainability ......................................................................... 20

    3.  Typicality .................................................................................. 20

    4.  Commonality .............................................................................. 20

    5.  Adequacy .................................................................................. 21

    6.  Questions of Law and Fact Predominate ...................................... 22

    7.  Superiority of Class Action ......................................................... 22

G.    The Notice To Be Given Is The Best Practical ........................................ 23

V.    SUMMARY OF LITIGATION COSTS ........................................................... 23

VI.    THE BEST PRACTICAL NOTICE .................................................................. 24

VII.    THE REQUESTED ENHANCEMENT PAYMENTS ARE REASONABLE ................. 24

VIII.    CONCLUSION ............................................................................................ 27

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (3:09-CV-01375-TEH)

1

## **TABLE OF AUTHORITIES**

2

### **Federal Cases**

3

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. PA 1985)........................................................25

4

*Boyd v. Bechtel Corp.,* 485 F. Supp. 610 (N.D. Cal. 1979) ...........................................................14

5

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ...........................................................................25

6
*Enterprise Energy Corp. v. Columbia Gas Transp. Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991).....25

7

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)........................................................................14, 18

8

*Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990) ..................................................................11

9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ............................................20, 22

10

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964) ................................19

11

*In re Chicken Antitrust Litig.*, 560 F. Supp. 957 (N.D.  Ga. 1980)...............................................10

12

*In re Dunn & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366
       (S.D. Ohio 1990)...................................................................................................................25

13

14
*In re Excess Value Ins. Coverage Litig.*, No. M-21-84 (RMB),
       2004 WL 1724980 (S.D.N.Y. July 30, 2004) .......................................................................10

15

*In re General Motors Corp.*, 55 F.3d 768 (3d Cir. 1995) .............................................................14

16

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359 (N.D. Ohio 2001) ............................10

17

*In re Paine Webber Ltd. Partnerships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) ..........................11

18

*In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*,
       122 F.R.D. 251 (C.D. Cal. 1988) .........................................................................................20

19

20
*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) .......................................21

21
*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677
       (7th Cir. 1987)......................................................................................................................11

22

23
*National Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523
       (C.D. Cal. 2004)...............................................................................................................11, 18

24
*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*,
       688 F.2d 615 (9th Cir. 1982) ...............................................................................................8

25
*Philadelphia Hous. Auth. v. Am. Radiator & Standard. Sanitary Corp.*,
       323 F. Supp. 364 (E.D. Pa. 1970) .......................................................................................8

26

*Priddy v. Edelman*, 883 F.2d 438 (6th Cir. 1989)........................................................................10

27

*Roberts v. Texaco*, 979 F. Supp. 185 (S.D.N.Y 1997)................................................................25

28

iii

*Sommers v. Abraham Lincoln Federal Savings & Loan Association*,
    79 F.R.D. 571 (E.D. Pa. 1978)........................................................................11

*Steinberg v. Carey*, 470 F. Supp. 471 (S.D.N.Y. 1979).............................................11

*Thornton v. East Texas Motor Freight*, 497 F.2d 416 (6th Cir. 1974) .........................25

*Util. Reform Project v. Bonneville Power Admin.,* 869 F.2d 437
    (9th Cir. 1989).............................................................................................8, 9

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ............................17, 18
*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)..................25

*Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273 (D.Colo. 1997) .....................8, 10

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983)................................................10

*Young v. Katz*, 447 F.2d 431 (5th Cir. 1971) ........................................................18

**State Cases**

*Suastez v. Plastic Dress-up Co.,* 31 Cal.3d 774 (1982) ...........................................16

**Federal Statutes**

Fed. R. Civ. Proc. 23.....................................................................19, 20, 21, 22, 23, 24

**State Statutes**

Cal. Lab. Code § 218.5 ...............................................................................9, 26
Cal. Lab. Code § 227.3 ...............................................................................15, 16

**Other Materials**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*
    (4th ed. 2010)........................................................................7, 10, 17, 18

5 James Wm. Moore et al., *Moore's Federal Practice* §23.165 (3d ed. 2010) ............8

*Manual for Complex Litigation Fourth ("Manual")*
    (Fed. Judicial Center 2004), § 21.632............................................................7

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (3:09-CV-01375-TEH)

1    **<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

2    **I.        INTRODUCTION**

3            After over 3 years of contentious litigation, including two separate mediation sessions

4    with two different class action mediators, an amendment to the complaint, and extensive pre-trial

5    depositions, written discovery, and expert analysis, the Parties have finally reached a settlement[1] on a

6    class-wide basis that provides $9,625,000.00 million as the Gross Settlement Amount to be shared

7    among approximately 11,775 class members after submitting a simple claim form (by prepaid mail)

8    with the estimated amount each claimant would receive, with a guaranteed floor payment of 45% of

9    the Net Settlement Amount.   If all Class Members file claims, the full amount of $9,625,000.00

10   million will be paid out.  The Settlement provides a release of claims limited and narrowed to specific

11   factual allegations that have been made against Defendant.    Joint Stipulation of Settlement

12   ("Settlement"), Ex. 4.[2]

13           For the reasons set forth below, Plaintiffs and Class Counsel believe this Settlement is

14   fair, reasonable and adequate and request the Court preliminarily approve it so that the Class can

15   receive the potential benefits it provides.   (Hart Decl. ¶ 32; Yoon Decl. ¶ 5; Yarian Decl. ¶ 7;

16   Patatanyan Decl. ¶ 7; Gould Decl. ¶ 12.)

17   **II.        SUMMARY OF THE SETTLEMENT TERMS**

18           The Joint Stipulation of Settlement provides for $9,625,000.00 as the Gross Settlement

19   Amount.  Settlement ¶ 2.23.  Pursuant to the terms of the Settlement, the Net Settlement Amount (after

20   deduction of Court Approved costs of Class Counsel's attorneys' fees and litigation costs, Settlement

21   Administration Costs, the PAGA Payment, Enhancement Payments to the Class Representatives, and

22   if applicable, the Employer's Share of Payroll Taxes) will compensate the Class Members, which is

23   defined as "means all persons employed by Defendant in California in a non-exempt position at any

---

[1]   The Parties reached the long form Settlement only recently, but the MOU which formed the basis of Settlement was only reached on the eve of the issuance of the California Supreme Court *Brinker* Opinion.

[2]   A true and correct copy of the Joint Stipulation of Settlement is attached as Exhibit A to the Declaration of Peter M. Hart submitted herewith.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (3:09-CV-01375-TEH)

time between February 25, 2005 through the earlier of (1) date of Preliminary Approval of the Settlement by the Court, or (2) August 1, 2012." The Class is estimated to be approximately 11,775 persons. *Id.* at ¶ 2.9. Each Class Member's Claim Amount will be calculated using a point system, whereby each Class Member will be awarded one (1) point per workweek, with an additional ten (10) points awarded to each terminated employee. Each Class Member's points will then be divided by the total number of points for all Class Members, and the resulting fraction then multiplied by the Net Settlement Amount. Workweeks are calculated from Defendant's records. Workweeks are defined as the total length of service as a non-exempt hourly employee in California (measured in days) of Defendant for each employee divided by seven. *Id.* at ¶ 6.10.1.

The Settlement provides that at least forty-five percent (45%) of the Net Settlement Amount will be paid out by Defendant to Class Members. Settlement ¶ 6.10.2. The Settlement provides that "If the Qualified Claimants do not claim at least forty-five percent (45%) of the Net Settlement Amount, then Qualified Claimants shall have their shares of the Net Settlement Amount increased in relative proportion to the ratio used to initially calculate the Qualified Claimants' respective Claim Amounts, until at least 45% of the Net Settlement Amount is paid. In the event the Qualified Claimants' claims exceed 45% of the Net Settlement Amount, then the amount claimed will be paid to Qualified Claimants. The remainder, if any, of the Net Settlement Amount will be retained by Defendants." Settlement ¶ 6.10.2.

The Settlement Class consists of approximately 11,775 members. Settlement ¶ 2.9. The Net Settlement Amount will be paid to all Class Members who timely submit a valid Claim Form subject to the limitations set forth above. Settlement ¶ 6.4.1. The Notice Packet explains to the Class Members all the procedures for settlement and will provide the Class Members information as to how they may submit a claim for their respective proportionate shares of the Net Settlement Amount. Settlement ¶ 6.4.1.

The Settlement calls for a Private Attorney Generals Act ("PAGA") Payment of $96,000.00 (ninety-six thousand dollars) of which $72,000.00 (seventy-two thousand dollars) will be paid to the California Labor & Workforce Development Agency ("LWDA"). Settlement ¶ 2.28.

1    Subject to Court approval, the Settlement provides for an award of attorneys' fees to

2 Plaintiffs' counsel in an amount not to exceed 25% of the Gross Settlement Amount, or $2,406,250.00,

3 and an award of actual litigation costs.   Settlement ¶ 6.6.   The Settlement also provides for an

4 enhancement payment to Class Representatives in the amount of $15,000.00 or $25,000.00 each (for a

5 total of up to $125,000) also subject to approval of the Court at the time of the final approval and

6 fairness hearing.  *Id.* at ¶ 6.7.1.

7    In addition, the Settlement provides for a limited release of only claims arising out of

8 specific factual allegations.  *Id.* at ¶¶ 2.35.

9    Class Members may request exclusion from the Settlement if they so choose.  *Id.* at ¶

10 6.4.4.  In the event over 5% of Class Members file proper and timely Requests for Exclusion prior to

11 the final approval and fairness hearing, Defendant shall have the sole and absolute discretion to void

12 the Joint Stipulation of Settlement.  *Id.* ¶ 6.4.8.

13 **III.        HISTORY OF THE LITIGATION**

14    This case has a litigation history spanning over 3 full years.  During this time, extensive

15 discovery, legal analysis, and data analysis (including extensive expert analysis) has been performed

16 by the parties permitting each side to assess the relative merits of the claims and defenses thereto.

17 This litigation began in early 2009 and resolved only after substantial and contentious litigation of the

18 action.  (Hart Decl. ¶ 7.)

19    **A.        Summary of Events from 2009**

20    The original complaint was filed by Gary Minor and Banipal Shabaz on February 25,

21 2009.  Prior to the filing of the complaint, extensive investigation took place with the original plaintiff

22 at that time and conference calls with other potential witnesses.  In the Original Complaint ("OC")

23 Plaintiff alleged various violations of the Labor Code, in particular the failure to provide meal breaks,

24 failure to pay overtime wages, failure to reimburse for all work-related expenses, forfeiture of vacation

25 wages, inaccurate wage statements, and unfair business practices.  This matter was removed to the

26 United States District Court on March 27, 2009.  (Docket No. 1, filed March 27, 2009.)

27    In the early phase of litigation of the original complaint and after Defendant's response

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (3:09-CV-01375-TEH)

to it, the Parties engaged in discussions about the potential of an early resolution to this case through private mediation.   Plaintiff agreed to this proposal subject to Defendant producing sufficient discovery to allow Plaintiff to perform an adequate damage analysis.  (Hart Decl. ¶ 9.)

Defendant agreed and thereby produced the requested discovery.  After a detailed and substantial review of the class data using an expert consultant who examined tens of thousands of line-items of data and after review by counsel for Plaintiff of the policies and procedures of Defendant, the Parties attended the first of what would become two mediation sessions.  (Hart Decl. ¶ 10.)  The Court then issued a partial discovery stay on July 6, 2009 relating to Plaintiff's meal break claims pending the decision in in *Brinker Restaurant Corp. v. Superior Court*, 165 Cal. App. 4th 165 (review granted October 22, 2008).   Plaintiffs anticipated filing a motion for class certification after completing discovery on the stayed claims once the issues relating to the stay were resolved by the California Supreme Court.  (Hart Decl. ¶ 11.)  In addition, Plaintiffs' Counsel travelled to Dallas, Texas to take the deposition of Defendant's Rule 30(b)(6) witness, Tracy Brightman, on November 5, 2009. Defendant required that Plaintiffs take Ms. Brightman's deposition in Dallas, Texas, where it is headquartered, rather than in California or any other location.  (Hart Decl. ¶ 12.)

This first mediation session was held on November 16, 2009 in San Francisco with Mark Rudy, a well-known and experienced wage and hour class action mediator.  The Parties were not able to reach a resolution during this first session.  However, the parties did engage in a joint discussion of the claims and damages under the auspices of the mediator and the Parties determined that a second session of mediation may be fruitful at a later date.  Since a resolution was not reached, the Parties resumed their litigation status.  (Hart Decl. ¶ 13.)

### B.     Summary of Events from 2010

After the first mediation, Plaintiffs served further written discovery on issues not covered by the stay in the case and met and conferred with Defendant regarding seeking supplemental discovery responses from them.  (Hart Decl. ¶ 14.)

On July 19, 2010, a Motion for Transfer of Actions to the Central District of California pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings was filed.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (3:09-CV-01375-TEH)

1   Plaintiffs filed their Second Amended Complaint ("SAC") on November 22, 2010.  (Hart Decl. ¶ 15.)

2   Plaintiffs engaged in numerous discussions with counsel for Plaintiffs in the other cases as well

3   conferring with Defense counsel on the issue.  (Hart Decl. ¶ 16.)  The Second Amended Complaint

4   added Narek Eloyan, Shehan Bederian and Michael Macias as additional representative plaintiffs in

5   this case, as well as their claims for unpaid vacation wages (including but not limited to floating

6   holidays and personal days) and failure to timely pay wages at termination.    Plaintiffs Eloyan,

7   Bederian and Macias worked for FedEx Office in Southern California, thereby supporting the

8   allegations that the violations were statewide.  (Hart Decl. ¶ 17.)

9          The matter was referred to Magistrate Judge Zimmerman for all discovery purposes.

10  (Hart Decl. ¶ 18.)

11      **C.     Summary of Events from 2011**

12          The Parties engaged in extensive and hard-fought litigation.  Plaintiffs sought discovery

13  of Defendant's policies, practices and procedures in connection with the alleged claims.  Though the

14  discovery sought was for purposes of class certification, it also overlapped with what would be

15  discovery on the merits of the various claims.  While the Parties acted professionally in all aspects of

16  this action, the discovery phase was contentious and the parties had various disputes over the

17  production of documents and the responsiveness of written discovery that was propounded.  (Hart

18  Decl. ¶ 19.)

19      On December 12, 2011, the Parties participated in a second mediation session in San

20  Francisco, this second session being with mediator Michael Dickstein.  In attendance at this mediation

21  second session were Plaintiffs Gary Minor, Banipal Shabaz, Narek Eloyan and Shehan Bederian, as

22  well as Plaintiffs' Counsel Peter Hart, Kimberly Westmoreland, Kenneth Yoon, Stephanie Yasuda,

23  Allen Patatanyan, and Michael Gould.  Plaintiff Michael Macias made himself available by phone.

24  While the Parties did not reach a settlement at the mediation, Plaintiffs Counsel provided FedEx

25  Office with settlement demands and continued to engage in further communications with Mr.

26  Dickstein and directly with counsel for FedEx, continuing to make further progress towards resolution.

27  (Hart Decl. ¶ 20.)

28
NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (3:09-CV-01375-TEH)

**D.      Summary of Events from 2012**

On April 11, 2012, on the night before the California ultimately issued its long awaited opinion in *Brinker*, the Parties reached resolution by signing a binding Memorandum of Understanding.  (Hart Dec. ¶ 21.)  This resolution occurred after numerous discussions with mediator Dickstein and telephonic conferences among counsel for Plaintiffs and counsel for Defendant that took place after the December 2011 mediation session.

After the resolution that was achieved, the Parties continued to negotiate the remaining details of the long-form settlement document.  After many negotiations, the current Joint Stipulation of Settlement was agreed to by the Parties.  (Hart Decl. ¶ 22.)  The Parties also notified the Court that a resolution had been achieved and sought continuances of case management conferences that were no longer necessary and informed the Court that they would file a motion for preliminary approval on or before August 1, 2012.

As shown above, and as further discussed herein, there should be little doubt that the Parties were well informed and possessed all of the relevant information needed to reach this current Settlement.  This case has been litigated for over three years.  Plaintiffs and Defendant have done extensive investigation, discovery and law and motion work leading up to this Settlement.   Plaintiffs have extensively investigated the exposure of FedEx Office in the two mediation sessions that led to this Settlement. (Hart Decl. ¶ 23.)

Class Counsel also note that if preliminary approval of this Settlement is granted, there will still be considerable amount of work remaining in seeing the Settlement through all the phases of administration, including the mailing of the Notice Packets and anticipated calls and written communications from hundreds of class members with questions about the Settlement.  There are significant administration issues that arise in every settlement, and all the more so in a class settlement of this size.  (Hart Decl. ¶ 24.)

**IV.        LEGAL ANALYSIS**

**A.      The Class At Issue And The Settlement Fund**

As described above, the proposed class numbers approximately 11,775 persons as of

the time of the Settlement being reached.  Defendant has agreed to collect information regarding the identity of the members of this proposed Class.  The Parties have further agreed and stipulated that this Class be certified on a provisional, non-mandatory basis for the purposes of this Settlement only.

**B.     Two-Step Approval Process**

Any settlement of class litigation must be reviewed and approved by the Court.  This is done in two steps: (1) an early (preliminary) review by the court, and (2) a final review and approval by the court after notice has been distributed to the class members for their comment or objections. The Manual for Complex Litigation, Fourth states:

> Review of a proposed class action settlement generally involves two hearings.  First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the [class action requirements].  If there is a need for subclasses, the judge must define them and appoint counsel to represent them. The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

*Manual for Complex Litigation,* Fourth (Fed. Judicial Center 2004), § 21.632 (quotation marks and internal citations omitted).

Thus, the preliminary approval by the trial court is simply a conditional finding that the settlement appears to be within the range of acceptable settlements.  As Professor Newberg comments, "[t]he strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal may vary.  The court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid subject only to any objections that may be raised at a final hearing."  4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 11.26 (4th Ed. 2010).  A court should grant preliminary approval of a class action settlement where it is within the "range of reasonableness."

The procedures for the parties' submission of a proposed settlement for preliminary approval by the court also are discussed in Newberg on Class Actions:

7

> When the parties to an action reach a monetary settlement, they will usually prepare and execute a joint stipulation of settlement, which is submitted to the court for preliminary approval.  The stipulation should set forth the essential terms of the agreement, including but not limited to the amount of settlement, form of payment, manner of determining the effective date of settlement, and any recapture clause.

*Id*. at § 11.24.

Here, the Parties have reached such an agreement and have submitted to the Court in connection with this Motion a copy of the Joint Stipulation of Settlement fully setting forth the agreement reached among the Parties.  The Joint Stipulation of Settlement sets forth all terms of the agreement reached by the Parties.  (Hart Decl. ¶ 25, Ex. A.)

### C.    The Standard For Preliminary Approval

As a matter of public policy, settlement is a strongly favored method for resolving disputes.  *See Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in complex class actions such as this case.  *See Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D.Colo. 1997).

Preliminary approval does not require the Court to make a final determination that the settlement is fair, reasonable and adequate.  Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the Class Members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement.  *See* 5 James Wm. Moore et al., *Moore's Federal Practice* §23.165 (3d Ed. 2010).   In considering the settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the merits.  *See Officers for Justice*, 688 F.2d at 625.  Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement ... may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard. Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

"The judge should raise questions at the preliminary hearing and perhaps seek an independent review if there are reservations about the settlement, such as unduly preferential treatment

1  of class representatives or segments of the class, inadequate compensation or harms to the classes, the

2  need for subclasses, or excessive compensation for attorneys."  Manual § 21.633.

3  This Settlement does not pose such issues.  This was highly-contentious litigation with

4  the Parties each being represented by highly-competent counsel.  As discussed above, the Parties

5  engaged in substantial discovery and investigation into the claims and defenses alleged in this case.

6  Furthermore, the Settlement was reached after the Parties utilized the assistance of two experienced

7  mediators and after substantial arms-length negotiations between the Parties.  (Hart Decl. ¶ 26.)

8  In addition, with respect to the enhancements of the Class Representatives, it is based

9  on (1) the effort and time they made in volunteering to represent the classes, (2) the requirement for

10  them to provide a greater or full release than Class Members, (3) the financial risks to them as some of

11  the settled claims have a provision for two-way attorney's fees under Labor Code section 218.5, and

12  (4) the risk that, because this lawsuit was a public record and that their names would be publicly

13  associated (at least to the putative class members) with this class action, they may suffer negative

14  impacts on their future employment.  (Hart Decl. ¶ 27.)  Moreover, Class Counsel are seeking only

15  25% of the Gross Settlement Amount as attorney's fees.  Finally, pursuant to the Joint Stipulation of

16  Settlement, at least 45% Net Settlement Amount, after payment of attorney's fees, litigation costs,

17  class representative enhancements, and costs of claims administration, shall be paid to all class

18  members who do not choose to opt-out.  Settlement ¶ 6.10.2.

19  The proposed Settlement satisfies the standard for preliminary approval as it is well

20  within the range of possible approval and there are no grounds to doubt its fairness.  (Hart Decl. ¶ 28.)

21  Counsel for Plaintiffs and Defendant have extensive experience in employment law, particularly wage

22  and hour litigation, and reached settlement only a full day of mediation and extensive arm's-length

23  negotiations.  (Hart Decl. ¶ 29.)

24  **D.**     **Procedures For Settlement Before Class Certification**

25  The parties also may, at the preliminary approval stage, request that the court

26  provisionally approve certification of the class – conditional upon final approval of the settlement.

27  Settlements are highly favored, particularly in class actions.  *Util. Reform Project v. Bonneville Power*

28

9

*Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in complex class actions such as this case. *Officers for Justice*, 688 F.2d at 625; *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D.Colo. 1997). Plaintiffs request such provisional approval at the preliminary approval hearing:

> The strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal . . . . may be set out in conditional orders granting tentative approval to the various items submitted to the court. Three basic rulings are often conditionally entered at this preliminary hearing. These conditional rulings may approve a temporary settlement class, the proposed settlement, and the class counsel's application for fees and expenses.

4 Newberg on Class Actions at §11.26. Further, there is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *In re Excess Value Ins. Coverage Litig.*, No. M-21-84 (RMB), 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004) ("Where 'the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.'") (citation omitted); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001) ("When a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair")

Here, the Parties have also stipulated to certify the class for purposes of this Settlement only. (Hart Decl. ¶ 30.)

For reasons set forth in greater detail below, Class Counsel is of the opinion that this case can be certified for settlement purposes.

**E.      The Settlement Is Fair, Reasonable And Adequate**

**1.            The Settlement May be Presumed Fair and Reasonable**

Courts presume the absence of fraud or collusion in the negotiation of settlement unless evidence to the contrary is offered. *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987); *In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 962 (N.D. Ga. 1980). Courts do not substitute their judgment for

10

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (3:09-CV-01375-TEH)

1  that of the proponents, particularly where, as here, settlement has been reached with the participation

2  of experienced counsel familiar with the litigation.  *National Rural Telecomms. Coop. v. DIRECTV,*

3  *Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *Hammon v. Barry*, 752 F. Supp. 1087, 1093-1094 (D.D.C.

4  1990); *Steinberg v. Carey*, 470 F. Supp. 471, 478 (S.D.N.Y. 1979); *Sommers v. Abraham Lincoln*

5  *Federal Sav. & Loan Ass'n*, 79 F.R.D. 571, 576 (E.D. Pa. 1978).

6          While the recommendations of counsel proposing the settlement are not conclusive, the

7  court can properly take them into account in recognition of counsel's duty to the entire class; this is

8  particularly true where, as in the instant case, counsel has been involved in informal and formal

9  discovery and negotiations for some period of time.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV,*

10  *Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2003) (quoting *In re Paine Webber Ltd. P'ships Litig.*, 171

11  F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of the arm's length negotiation process is

12  preserved, however, a strong initial presumption of fairness attaches to the proposed settlement . . .

13  and 'great weight' is accorded to the recommendations of counsel, who are most closely acquainted

14  with the facts of the underlying litigation.")).

15                          a.          **Arms-Length Bargaining**

16          There can be no doubt that the Joint Stipulation of Settlement is the result of extensive

17  investigation and negotiations.  It was reached only after numerous hours of settlement negotiations,

18  two full-day mediations with experienced mediators, Mark Rudy and Michael Dickstein, all of which

19  took place over a three year period.  Even after the second and final mediation before Mr. Dickstein on

20  December 12, 2011, the Parties only reached settlement after numerous extended emails and telephone

21  conferences, including participation by Mr. Dickstein, ultimately only executing an MOU on the eve

22  of the issuance of the California Supreme Court *Brinker* Opinion.  The Parties have agreed that the

23  Settlement reached is a compromise for the damages of absent Class Members for the alleged

24  violations.  It also compensates Class Representatives for their claims and provides an additional

25  enhancement payment to each of them, thus taking into consideration the risks, time, effort and

26  expenses incurred by the class representatives in coming forward to provide invaluable information,

27  negotiate, and litigate this matter on behalf of all Class Members.  (Hart Decl. ¶ 31.)

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (3:09-CV-01375-TEH)

Plaintiffs and Defendant both hold strong opinions regarding liability and damages in the instant matter. However, based on their own independent investigations and evaluations, the Parties and their respective counsel are of the opinion that the Settlement for the consideration and on the terms set forth in the Joint Stipulation of Settlement are fair, reasonable, and adequate and is in the best interest of the Class Members and Defendant in light of all known facts and circumstances and the risks inherent in litigation, including the risk of potential appeals. (Hart Decl. ¶ 32; Yoon Decl. ¶ 5; Yarian Decl. ¶ 7; Patatanyan Decl. ¶ 7; Gould Decl. ¶ 12.)

### b.    Investigation and Discovery Prior to Settlement

Each side has apprised the other of their respective factual contentions, legal theories and defenses, resulting in extensive arms-length negotiations taking place among the Parties. In addition, extensive discovery was conducted in this case in light of the narrow issues of this case. Plaintiffs took the depositions of Defendant's Fed. R. Civ. P. 30(b0(6) witnesses with respect to human resources policies, as well as how these policies are implemented and practiced in the field. (Hart Decl. ¶ 33.) Furthermore, Plaintiffs have received substantial documentary evidence necessary to determine liability on the amount of wages owed, as well as damages data for the class, which has been used to calculate the damages exposure for the class and allocation of payments, including Defendant's admitted policies, practices and procedures as applied to all Class Members. In sum, Plaintiffs have obtained detailed discovery on both liability and damages.

Based on the above, the Settlement for each participating Class Member is fair, reasonable, and adequate, given the inherent risk of litigation, the risks and time of appeal, and the costs of pursuing such litigation. It is the result of extensive investigation and negotiations. It was reached only after two full-day mediation session with experienced mediators, Mark Rudy and Michael Dickstein, and substantial arm's-length negotiations. (Hart Decl. ¶ 34; Yoon Decl. ¶ 5; Yarian Decl. ¶ 7; Patatanyan Decl. ¶ 7; Gould Decl. ¶ 12.)

Fairness of the Settlement is also demonstrated by the uncertainty and risks to Class Representative involved in not prevailing on the causes of action or theories alleged in their Complaint and the risk of paying costs and attorney's fees to Defendant as Defendant adamantly dispute the

12

1    ability of Class Representatives to certify a class as well as the merits of Class Representatives'

2    claims.  (Hart Decl. ¶ 35.)

3            The Settlement reached is a compromise for the damages of absent Class Members for

4    the alleged violations.  It also compensates Class Representatives for their claims and provides an

5    additional incentive award payment, thus taking into consideration the risks, time, effort and expenses

6    incurred by the class representative in coming forward to provide invaluable information, negotiate,

7    and litigate this matter on behalf of all Class Members.  (Hart Decl. ¶ 36.)

8            Based on their own independent investigations and evaluations, the Parties and their

9    respective counsel are of the opinion that the Settlement for the consideration and on the terms set

10    forth in this Settlement is fair, reasonable, and adequate and is in the best interest of the Class

11    Members and Defendant in light of all known facts and circumstances and the risks inherent in

12    litigation, including the risk of potential appeals.  (Hart Decl. ¶ 32; Yoon Decl. ¶ 5; Yarian Decl. ¶ 7;

13    Patatanyan Decl. ¶ 7; Gould Decl. ¶ 12.)

14            Despite the asserted fairness of the Settlement, should any potential Class Member,

15    upon reviewing the Class Notice, object to the terms of the settlement as set forth in the Settlement,

16    each has the right to file an objection or seek exclusion from the Settlement.  By such procedure, Class

17    Members, upon providing proper notice to the Parties and the Court, may attend the final fairness and

18    approval hearing for the purpose of objecting to one or more of the settlement terms set forth in the

19    Settlement.

20            Alternatively, potential Class Members can seek exclusion from the Class and seek

21    their own separate remedy.

22             **c.**       **Experience of Class Counsel**

23            Here, both Class Representatives' and Defendant's counsel have a great deal of

24    experience in wage and hour class action litigation.  Class Representatives' Counsels have been

25    approved as class counsel in a number of other wage/hour class actions.  (Hart Decl. ¶ 63.)  Moreover,

26    as noted above and detailed below, Class Representatives' Counsel conducted an extensive

27    investigation of the factual allegations involved in this case.  (Hart Decl. ¶ 3.)  Thus, based upon such

28

1   experience and knowledge of the current case, Class Representatives' Counsel believe that the current

2   Settlement is fair, reasonable and adequate.  (Hart Decl. ¶ 32; Yoon Decl. ¶ 5; Yarian Decl. ¶ 7;

3   Patatanyan Decl. ¶ 7; Gould Decl. ¶ 12.)    In sum, there should be a presumption of fairness because

4   the factors establishing such a presumption are clearly satisfied.

5                    **2.          The Settlement is Fair, Reasonable and Adequate**

6             The Settlement for each participating Class Member is fair, reasonable and adequate,

7   given the inherent risk of litigation, the risk of appeals, the risks in an area where it is argued that the

8   law is unsettled, and the costs of pursuing such litigation.  (Hart Decl. ¶ 32; Yoon Decl. ¶ 8; Yarian

9   Decl. ¶ 7; Patatanyan Decl. ¶ 7; Gould Decl. ¶ 12.)   The Settlement here is within a range of

10  reasonableness allowing for preliminary approval.   Applying the rest of the factors here, the

11  Settlement for each participating Class Member is fair, reasonable and adequate, given the inherent

12  risk of litigation, the risk of appeals, the risks in an area where it is argued that the law is unsettled,

13  and the costs of pursuing such litigation. (Hart Decl. ¶ 32; Yoon Decl. ¶ 8; Yarian Decl. ¶ 7;

14  Patatanyan Decl. ¶ 7; Gould Decl. ¶ 12.)

15                    **a.     The Settlement Is Fair and Reasonable Given Maximum Potential**

16                          **Recovery and Accompanying Risks of Continued Litigation**

17            To assess the fairness, adequacy and reasonableness of a class action settlement, the

18  Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks

19  inherent in continued litigation. See *In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995)

20  ("present value of the damages plaintiffs would likely recover if successful, appropriately discounted

21  for the risk of not prevailing, should be compared with the amount of the proposed settlement.");

22  *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17

23  (N.D. Cal. 1979); Manual § 21.62 at 316.

24                    **i.     Overtime   Wages;   Minimum   Wages;   Regular   Time;**

25                          **Unreimbursed of Work-related Expenses**

26            Plaintiffs contend that Defendant, as a matter of practice, did not pay overtime wages

27  for all hours worked over 8 hours in a work-day or 40 hours in a work week.   Defendant's class-wide

28                                        14

1   policies, practices and procedures required employees to work overtime without payment of all

2   overtime wages due to (1) manual edits to their time that resulted in reduction of their hours worked in

3   the time system and thus reduction of their overtime pay in their wage payments; (2) splitting work

4   shifts at midnight, often reducing daily overtime premiums.

5          Plaintiffs also allege that Defendant has a further policy that deprives its employees of

6   overtime by failing to pay overtime wages to employees who worked more than 8 hours in a work

7   shift in which the shift straddled two workdays.

8          Based on the investigation and discovery conducted to date, the high end exposure for

9   overtime wages owed, double-time wages owed, minimum wages owed, and wages owed under all the

10  theories of liability in this action is $9,300,000.

11         Further, Plaintiffs allege that Defendant regularly required employees perform work-

12  related travel time without compensation.  Based on the investigation and discovery conducted to date,

13  the high end exposure for this travel time (including mileage) is $750,000.00.

14                          **ii.      Labor Code § 226.7**

15         Plaintiffs allege that on a class-wide basis, Defendant failed to provide all employees

16  with all proper meal periods and were suffered and permitted to work through legally required meal

17  breaks.   Plaintiffs alleged that Defendant required Class Members at single post positions, where they

18  were not provided duty-free meal beaks or rest breaks.  In addition, Plaintiffs allege that Defendant

19  failed to pay class members all meal period premium pay due for all meal periods that did not comply

20  with the requirements of the Labor Code but failed to pay these penalties, particularly for meals that

21  were less than 30-minutes in length and that Defendant failed to pay rest break premiums for rest

22  breaks that were not properly authorized and permitted.  Separately, Defendant also has a common

23  class-wide meal period waiver that violates California law.  Based on the investigation and discovery

24  conducted to date, the wages owed high end exposure for meal period premiums is $9,600,000.

25  Similarly, the wages owed exposure for rest break premiums is $9,600,000.

26                          **iii.     Vacation Wages**

27         Section 227.3 requires that when "an employee is terminated without having taken off

28                                          15

his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with . . . [the] employer policy respecting eligibility or time served. . . ."  Lab. Code § 227.3.  In *Suastez v. Plastic Dress-up Co.*, 31 Cal.3d 774 (1982), the California Supreme Court unambiguously stated:

> [A] proportionate right to a paid vacation "vests" as the labor is rendered. Once vested, the right is protected from forfeiture by section 227.3. On termination of employment, therefore, the statute requires that an employee be paid in wages for a pro rata share of his vacation pay.

*Id.* at 784.

Plaintiffs allege that they were entitled to and in fact did earn certain vacation wages (including, but not limited to, vacation pay, paid time off pay, personal day pay, personal holiday pay, and/or floating holiday pay).  Further, Plaintiffs allege that such earned and unused vacation wages were forfeited at the end of the calendar year or anniversary hire date and sought restitution of these forfeited wages.

Defendant denies any liability regarding vacation wages, arguing that their policies are valid under California law.  Defendant further denied violating California law with respect to any alleged forfeiture of accrued time off.

Based on the investigation and discovery conducted to date, the exposure for vacation wages owed is $2,250,000.

### iv.          Reasonableness Given the Type of Employment

The dollar Settlement value of $9,625,000.00 is fair and reasonable and is an excellent recovery for the class.  The exposure numbers set out above are Plaintiffs' counsels' high end estimate and Defendant would argue that the exposure number could be as low as $0.00 owed.  This class totals approximately 11,775 persons as of April 11, 2012.  Generally speaking there are approximately 3,200 employees at any given time, paid on a bi-weekly basis, with the average rate of pay of $13.60 (both as of August 2009) and approximately the same to the current date as well.  Given this class size and the rates of pay, the $9,625,000 is a reasonable and fair settlement based on the high-end exposure numbers (assuming full provable liability at trial) used to negotiate this settlement and further suggests

that the settlement is fair, reasonable, and adequate.  Plaintiffs' counsel believes that the class would also agree with this description of the settlement and, accordingly, ask that the Court grant preliminary approval.

### v.   Reasonableness Given the Risks of Continued Litigation

The above exposure range should be viewed in terms of the risks avoided by this Settlement.  Though Plaintiffs' believe that all the legal defenses are class-wide defenses would ultimately be decided in favor of the Class, Defendant would contend that these legal defenses provide for no liability, even if the facts were as Plaintiffs' suggest.

The Settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also* 4 *Newberg on Class Actions* at § 11.41.

Finally, while Plaintiffs maintained penalties could be awarded at trial, Defendant maintained that in light of both the factual and legal defenses, no penalties could be assessed.

### b.   The Settlement is within the range of reasonableness.

The standard of review for class settlements is whether the Settlement is within a range of reasonableness.  As Professor Newberg comments:

> Recognizing that there may always be a difference of opinion as to the appropriate value of settlement, the courts have refused to substitute their judgment for that of the proponents.  Instead the courts have reviewed settlements with the intent of determining whether they are within a range of reasonableness.…

4 *Newberg on Class Actions,* at §11.45.

Here, the $9,625,000.00 Gross Settlement Amount requires distribution of at least forty-five percent (45%) of the Net Settlement Amount will be paid out by Defendant to Class Members.  Settlement ¶ 6.10.2.  Furthermore, the Settlement fund will be paid out entirely in cash (as opposed to a voucher, coupon, etc.).  The Settlement amount paid to each Class Member is based upon the tenure of their employment and whether they were terminated, and is provided in exchange for a specific release.  (Hart Decl. ¶ 37.)     For these reasons, and for the reasons set forth above relating to the total liability and the risks of prevailing on the theories of liability alleged, Class Representatives

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (3:09-CV-01375-TEH)

believe that the current Settlement is fair, reasonable, and adequate. (Hart Decl. ¶ 32; Yoon Decl. ¶ 8; Yarian Decl. ¶ 7; Patatanyan Decl. ¶ 7; Gould Decl. ¶ 12.)

        **c.**      **The complexity, expense, and likely duration of continued litigation against the settling defendant favors approval**

        Another factor considered by courts in approving a settlement is the complexity, expense, and likely duration of the litigation. *Officers of Justice*, 688 F.2d at 625; *Girsh*, 521 F.2d at 157. In applying this factor, the Court must weigh the benefits of the Settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *Young v. Katz*, 447 F.2d 431, 433-34 (5th Cir. 1971).

        The Settlement provides to all Class Members, regardless of their means, fair relief in a prompt and efficient manner. Were the parties to engage in continued litigation of this matter, after class certification, the losing party could seek an appeal of the certification decision. Following a decision by the trier of fact, the losing party would have the right to appeal. As the claims alleged by Plaintiffs are almost entirely legal issues, it makes the likelihood of multiple appeals almost certain. Given the realities of appellate practice, this process places ultimate relief several years away (indeed it can easily be five years or more).

        The idea of balancing a fair recovery now, with settlement dollars being paid out now, versus a years-long appeal process regarding various potential issues, is a significant factor to be considered. *See National Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004) (held proper "to take the bird in hand instead of a prospective flock in the bush"), and at 527 ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation.").

        Furthermore, were the case to be denied class approval, the Class Members could be left without a remedy as a practical matter and courts across the state would have to address the issues presented here in a piecemeal, costly, and time-consuming manner. The Settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

18

1    Cir. 1976); 4 *Newberg on Class Actions*, at § 11.41.

2                    **d.      Non-admission of Liability by Defendant**

3                    Finally, Defendant denies any liability or wrongdoing of any kind associated with the

4    claims alleged in this lawsuit, and further denies that, for any purpose other than that of settling this

5    lawsuit, this action is appropriate for class treatment.  Defendant maintains, among other things, that

6    they have complied at all times with California wage and hour laws.

7                    Because of such denial, if this case is not resolved, it will likely continue to be a long

8    and protracted litigation.

9                    **e.      This Lawsuit Has As A Matter of Public Policy Educated the**

10                          **Company and Employees**

11                   Plaintiffs' counsel also suggest that one of the result of a years-long litigation such as

12   this one that results in a significant settlement creates the public policy benefit of an educated

13   workforce and company with respect to California wage and hour laws.  This is especially in a case

14   such as this with a large class size of 11,775 people being educated regarding these California laws

15   much of which they probably did not know before.  If preliminary approval is granted, the class of

16   over 11,775 Class Members will get a Notice Packet.  The documents will have explain what this

17   lawsuit has been about, thus educating the class going forward, including educating Defendant's

18   current employees.  While not quantifiable on a dollar basis, the extensive litigation and ultimate

19   Settlement has had, Plaintiffs' counsel would argue, a significant public policy benefit.

20           **F.      The Proposed Settlement Class Satisfies The Elements For Certification**

21                   The Settlement class meets all the requirements for class certification:

22           **1.          Numerosity**

23                   The numerosity requirement is satisfied if the proposed class is "so numerous that

24   joinder of all members is impracticable."  FED. R. CIV. PROC. 23(a)(1).  Impracticable does not mean

25   impossible, only that it would be difficult or inconvenient to join all members of the class.  *See Harris*

26   *v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).  The class consists of

27   approximately 11,775 total persons.  (Hart Decl. ¶ 53.)  Here, the class size is easily satisfied as the

28                                              19

class exceeds 100 persons.

### 2.      Ascertainability

For purposes of the Settlement, each Class Member's Claim Amount shall be determined by a point system, whereby each Class Member is awarded one (1) point per workweek, with an additional ten (10) points awarded to each terminated employee. Each Class Member's points will then be divided by the total number of points for all Class Members, and the resulting fraction then multiplied by the Net Settlement Amount. Workweeks are calculated from Defendant's records. (Settlement ¶6.10.1) The Class is ascertainable as it has already been identified based on Defendant's records. (Hart Decl. ¶ 38.)

### 3.      Typicality

Typicality under Rule 23(a)(3) is satisfied if the representative plaintiff's claims share a common element with the class: i.e., those claims arise from the same course of conduct that gave rise to the claims of other settlement class members. *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.,* 122 F.R.D. 251, 256 (C.D. Cal. 1988). Class Representatives' claims are typical of those of other Class Members because Class Representatives allege they have suffered injury from the same specific actions that they allege harmed other members of the class, specifically Class Representatives were denied off-duty meal breaks, were denied proper overtime wages, were denied regular wages, were denied minimum wages, were not reimbursed for work related expenses, did not properly accrue vacation wages and received inaccurate wage statements, just like the rest of the Class. The named representatives' claims are typical of the class as a whole because they arise from the same factual basis and are based on the same legal theory as those applicable to the Class Members. (Hart Decl. ¶ 39.)

### 4.      Commonality

Commonality relates to whether there are "questions of law or fact common to the class." Fed. R. Civ. Proc. 23(a)(2). Commonality is satisfied if there is one issue common to class members. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). Here, Class Representatives contend the common issues include: (1) whether Defendant's policies and practices

regarding vacation and other PTO entitlements violated Labor Code section 227.3; (2) whether Defendant failed to pay all regular wages; (4) whether Defendant failed to pay all minimum wages; (5) whether Defendant failed to provide off-duty meal breaks for its employees; (6) whether the Meal Break Waiver was valid; (7) whether Defendant properly compensated their employees for all earned overtime wages; and (8) whether Defendant failed to provide accurate itemized wage statements in accordance with their corporate policies, practices, and procedures.  Although Plaintiff believes there are many additional common issues, there are sufficient common issues described herein to satisfy this requirement.  (Hart Decl. ¶ 40.)

The class shares common legal and factual issues for the same reasons that Class Representatives' claims are typical.  The unlawful policies and practices alleged by Class Representatives are the same ones that apply to all the Class.  For example, Defendant's policy to manually edit employee time records is the same policy that Defendant applied to all of their other employees.  Similarly, the reimbursement policies at dispute in this case are the same exact policies that applied to all of the Class Members and were applied in the same manner.  For such reasons, the claims alleged by Class Representatives are common to all of the Class Members.  (Hart Decl. ¶ 41.)

### 5.        Adequacy

Adequacy under Rule 23(a)(4) is satisfied if the class representatives have no disabling conflicts of interest with other members of the class and Class Counsel are competent and well qualified to undertake the litigation.  *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  No conflict exists between Class Representatives and the members of the class because Class Representatives contend they have been damaged by the same alleged conduct and have the incentive to fairly represent all Class Members' claims to achieve the maximum possible recovery.  (Hart Decl. ¶ 42.)  Class Representatives are fully informed of their duties as class representative and that they assumed a fiduciary obligation to the members of the class and that they surrendered any right to compromise the group action for their own individual gains.  (Hart Decl. ¶ 43.)  Class Representatives have spent considerable efforts in this case, including assisting with discovery.  Class Representatives were and remain willing to vigorously prosecute this action to the benefit of the class.

(Hart Decl. ¶ 44.)

Furthermore, Class Representatives are represented by counsel who have extensive experience in complex wage and hour litigation and have protected the interests of the Class Members. Indeed, Class Counsel carefully reviewed thousands of pages of documents in connection with this lawsuit, which included numerous policies and procedures pertaining to Defendant's payroll practices with respect to the putative class members as well as electronic payroll records for the entire class. (Hart Decl. ¶ 46.)   As an example, Class Counsel have consistently protected the interests of the putative class members, as evidenced by the release provided to Defendant as detailed in the Settlement, specifically that the release is focused on the claims made in the complaints against Defendant.  (Hart Decl. ¶ 47.)

### 6.        Questions of Law and Fact Predominate

Here, common questions of law or fact predominate over individual questions pursuant to Rule 23(b)(3).  These issues of fact and law raised in this action are common to all members of the classes and predominate in this case.  Here, Class Representatives contend that Defendant failed to provide proper meal breaks, failed to properly pay overtime, failed to properly accrue and pay vacation and floating holiday entitlements upon termination, failed to reimburse for all work-related expenses, failed to provide accurate itemized wage statements, and failed to pay all regular and minimum wages.  Based on discovery obtained in this action, Class Representatives believe and assert that Defendant committed these violations as to Class Representatives in the same manner as to all Class Members.

### 7.        Superiority of Class Action

The requirement that a class action is superior to other methods of adjudication under Rule 23(b)(3) is also met.  Courts have recognized that the class action device is superior to other available methods for the fair and efficient adjudication of controversies involving large number of employees in wage and hour disputes. *See, e.g. Hanlon*, 150 F.3d at 1022.

Thus, the Court should certify the Classes as defined herein for settlement purposes only, appoint the named Plaintiffs as Class Representatives, and appoint Peter M. Hart of the Law

1    Offices of Peter M. Hart and Kenneth H. Yoon of the Law Offices of Kenneth H. Yoon, as Class

2    Counsel.

3                   In the event final approval of the Settlement is not granted, the Parties will occupy the

4    same legal posture that they occupied at the outset of the litigation (e.g., this class certification will be

5    vacated) and be free to assert any claim or defense that they could have asserted at the outset of the

6    litigation, including Defendant's arguments against class certification.

7           **G.    The Notice To Be Given Is The Best Practical**

8                   "For any class certified under Rule 23(b)(3), the court must direct to class members the

9    best notice practicable under the circumstances, including individual notice to all members who can be

10   identified through reasonable effort."  Fed. R. Civ. Proc. 23(c)(2)(B).  "The court must direct notice in

11   a reasonable manner to all class members who would be bound by a proposed settlement, voluntary

12   dismissal or compromise."  Fed. R. Civ. Proc. 23(e)(B).

13                  Paragraph 6.3 of the Settlement provides that the court-appointed claims administrator

14   will send by first class mail a copy of the court-approved notice to all Class Members.  The Claims

15   Administrator will use a single skip-trace, computer or other search using the name, address and/or

16   Social Security Number of the individual involved for undeliverable Class Notices.  *Id.* at ¶ 6.3.2.

17                  The Notice provides the Class everything they need to know in order to make an

18   informed decision.  It provides an explanation of the proposed Settlement and procedures on how to

19   object and appear.  The documentation provides a brief explanation of the case, the exclusion date and

20   procedure for exclusion, the attorney's fees to be paid and the individual members' estimated recovery

21   under the Settlement net of expenses, which are all included in the notice papers.  It also states that

22   those who do not opt out will be bound by the Settlement.  *See* Notice at pp. 4, 6.

23   **V.    SUMMARY OF LITIGATION COSTS**

24                  Class Counsel have advanced substantial litigation costs over this 3 year plus litigation

25   period, including substantial costs on expert analysis if data and records, depositions, travel, mediation

26   fees, and other costs such as copies, court filings, service of documents.  The total estimated costs

27   currently advanced are approximately no more than $125,000.  (Hart Decl. ¶ 48.)  The major items

28

                                                    23

1    include deposition costs, mediator costs, and travel costs.

2    **VI.    THE BEST PRACTICAL NOTICE**

3              Paragraph 6.3 of the Settlement provides that the agreed-upon Claims Administrator

4    will send by mail a copy of the court-approved Notice Packet to all Class Members.  For any Notice

5    Packet returned to the Claims Administrator as undeliverable, the Claims Administrator will make

6    reasonable efforts to obtain a valid mailing address within ten (10) business days of the date of the

7    return of the Notice Packet and following each search that results in a corrected address, the Claims

8    Administrator will promptly resend the Notice Packet to the Class Member by first-class mail, postage

9    prepaid.  Settlement ¶ 6.3.2.  If no forwarding address is provided, the Claims Administrator shall

10   resend the Notice Packet to the Class Member, postage prepaid, to the original address.  *Id.*

11             The Notice Packet provides Class Members' everything they need to know in order to

12   make an informed decision.  It provides an explanation of the proposed Settlement and procedures to

13   object and appear, as is required by the Federal Rules of Civil Procedure.  *See*  Fed. R. Civ. P. 23(e).

14   The documentation provides a brief explanation of the case, the exclusion date and procedure for

15   exclusion, the attorneys' fees to be paid, the Enhancement Payment for each of the Class

16   Representatives, and the individual Class Members' estimated Claim Amount, which are all included

17   in the Notice Packet.  It also states that those who do not request exclusion will be bound by the

18   Settlement.  (Hart Decl. ¶ 55.)  The Parties request that the Court confirm that the suggested notice to

19   Class Members is sufficient.

20             Though the Notice provides a blank, it will provide an estimated sum for litigation

21   costs.  Class Counsel will provide that sum at the time of the preliminary approval hearing, but

22   presently the litigation costs are not expected to exceed $125,000.00, and the Parties have agreed to set

23   out that figure in the Notice.

24             The actual Claims Administrator will be identified to the Court at the time of the

25   preliminary approval hearing.  The current estimates for Settlement Administration Costs are in the

26   $80,000 range, which will be placed in the Notice.

27   **VII.    THE REQUESTED ENHANCEMENT PAYMENTS ARE REASONABLE**

28

1    Pursuant to the terms of the Joint Stipulation of Settlement, Defendant agreed not to

2    oppose an enhancement payment payable to each of the Class Representatives of $15,000.00 or

3    $25,000.00, which Class Representatives request this Court preliminary approve.

4    Incentive awards for representative plaintiffs are both proper and routine.  For example,

5    in *Enterprise Energy Corp. v. Columbia Gas Transp. Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio

6    1991), each representative plaintiff was granted a $50,000.00 incentive award.  *See also, In re Dunn &*

7    *Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 377 (S.D. Ohio 1990), where the various

8    representative plaintiffs received incentive awards ranging from $35,000.00 to $55,000.00.  Because a

9    named plaintiff is an essential ingredient of any class action, an incentive award is appropriate to

10    induce individuals to step forward and assume the burdens and obligations of representing the class.

11    In deciding the amount of an enhancement award for a class representative, relevant factors include

12    the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has

13    benefited from those actions and the amount of time and effort the plaintiff expended in pursuing the

14    litigation.  *See Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998); *Van Vranken v. Atlantic*

15    *Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp.

16    27, 32 (E.D. PA 1985).

17    Particularly in employment class actions, such as discrimination or wage claims, named

18    plaintiffs should be entitled to an enhancement award as an incentive to take the risks associated with

19    pursuing employment claims on behalf of other employees.  An award is justified where the plaintiff is

20    a "present or past employee whose present position or employment credentials or recommendation

21    may be at risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts

22    to the prosecution of litigation at some personal peril."  *Roberts v. Texaco*, 979 F. Supp. 185, 201

23    (S.D.N.Y 1997). "We also think there is something to be said for rewarding those drivers who protect

24    and help to bring rights to a group of employees who have been the victims of discrimination."

25    *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974).

26    The amount sought by Class Representatives is warranted in this case. Class

27    Representatives met with Class Counsel on numerous occasions, engaged in telephone discussions on

28

25

1 | many occasions, had their depositions taken, provided detailed and crucial information in providing

2 | many pages of documents regarding the case, and providing information on the alleged policies and

3 | practices of Defendant that formed the substance of this litigation.

4 | In particular, Class Representatives also plan on performing additional work for the

5 | betterment of the class after notice is sent out by talking with members who have questions.

6 | In addition, the Class Representatives ran the risk of not prevailing in this matter and

7 | thereby facing a cost bill and the possibility of payment of attorney's fees to Defendant, as the claim

8 | for vacation wages carries a two-way attorney's fees provision per California Labor Code § 218.5.

9 | This is a real risk that Class Representatives took at their own expense alone for the benefit of the

10 | classes of current and former employees of Defendant and a risk that other of Defendant's employees

11 | did not have to face in order to get this Settlement.

12 | Further, by being the named Class Representatives, they put their names forward on the

13 | public record at the risk of possible future adverse employment consequences by future or potential

14 | employers who might not choose to hire them because they took the lead in this lawsuit. This, too, is a

15 | significant risk that they have borne for the class of employees who have reaped the benefits of this

16 | case without having to face this risk personally themselves. *See Roberts*, 979 F. Supp. at 201.  Class

17 | Counsel believe this also should be considered in the award of the Class Representative Enhancement.

18 | (Hart Decl. ¶ 45.)

19 | Finally, and as mentioned previously, as part of the Settlement, Class Representatives

20 | were required to provide Defendant with a either a broader release, or a full and general release of any

21 | and all claims, something that the class members did not have to surrender in order to receive the

22 | benefits under this Settlement.

23 | The amount of $25,000.00 to each of the named Class Representatives is extremely

24 | reasonable given the risks that they took and bore for the class and the benefits they conveyed on the

25 | other class members.

26 | Based on the foregoing, Plaintiffs request that the Class Representatives enhancement

27 | payments of $25,000.00 to each of the Class Representatives be preliminarily approved.

28 |

**VIII.        CONCLUSION**

        Based on the foregoing argument and authority, Plaintiffs' respectfully request that the Court enter an Order Granting Preliminary Approval of this Class Action Settlement.

DATED:  September 28, 2012              LAW OFFICES OF PETER M. HART


                                By:  _____*/s/ Peter M. Hart*_____
                                       Peter M. Hart
                    Attorney for Plaintiffs and Class Counsel

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (3:09-CV-01375-TEH)