IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GARY MINOR, et al.,

               Plaintiffs,

v.

FEDEX OFFICE AND PRINT SERVICES, INC., et al.,

               Defendants.

NO. C09-1375 TEH

ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

      This matter came before the Court on December 3, 2012, on Plaintiffs' unopposed motion for preliminary approval of the above-referenced action pursuant to the Joint Stipulation of Settlement and Release that was filed with the Court on November 7, 2012 ("Settlement Agreement").[1] Having reviewed the Settlement Agreement, Plaintiffs' motion, and the pleadings and documents submitted in connection therewith, this Court GRANTS preliminary approval of the proposed settlement.

## BACKGROUND

### A. Litigation History

      This is a wage and hour class action brought under California Labor Code sections 203, 226, 226.7, 227.3, 1194, 2698, 2802 and Business and Professions Code sections 17200, *et seq.* Plaintiffs Gary Minor, Banipal Shabaz, Narek Eloyan, Shehan Bederian, and Michael Macias are current and former employees of Defendant FedEx Office and Print Services in California. The statewide class that Plaintiffs seek to represent is estimated to comprise 11,775 employees. Plaintiffs allege, among other things, that FedEx denied them minimum

---

[1] Capitalized terms used in this order shall have the same meaning as set forth in the Settlement Agreement.

and overtime wages, payment for missed meal and rest periods, reimbursement for work-related expenses including travel, mileage, and automobile-related expenses, vacation wages, including floating holidays, payment for all hours worked, timely payment for wages owed in a pay period and upon termination, and failure to provide and maintain accurate paystubs.

This Action, originally filed in California state court by Plaintiffs Gary Minor and Banipal Shabaz, was removed to this Court on March 27, 1999. Not long after the suit was filed, the Parties entered into settlement negotiations. Throughout the course of the litigation, the focus has been on defining the terms of the eventual settlement: there have been no prior dispositive motions filed in the case and Plaintiffs have not previously moved for class certification. However, limited discovery was undertaken for the purpose of permitting Plaintiffs to perform an adequate damages analysis.

On April 11, 2012, the day before the California Supreme Court issued its decision in *Brinker Restaurant Group v. Superior Court of San Diego*, 53 Cal. 4th 1004 (2012), the Parties entered into a Memorandum of Understanding ("MOU"). The MOU was signed by Plaintiffs' counsel, two of the five Plaintiffs, defense counsel, and an authorized representative of FedEx. The MOU was not signed by Gary Minor or Banipal Shabaz.

On September 28, 2012, Plaintiffs filed a motion for preliminary approval of class action settlement, which was not joined by FedEx. Attached to the motion was a copy of the Settlement Agreement signed by three of the five Plaintiffs. The Settlement Agreement was not signed by Gary Minor, Banipal Shabaz, or FedEx. FedEx subsequently submitted a request for a status conference, in which it asked the Court to resolve a dispute between the Parties. The issue in dispute was whether the Parties' MOU required that Gary Minor and Banipal Shabaz consent to be bound by the Settlement Agreement. After receiving FedEx's status conference request, the Court vacated the preliminary approval hearing on the grounds that there did not, in fact, appear to be a settlement in the case and ordered the Parties to file a joint supplemental brief addressing the status of the settlement. At the status conference held on November 5, 2012, the Parties informed the Court that Gary Minor, Banipal Shabaz,

and FedEx had signed the Settlement Agreement, and that all Parties were prepared to proceed on to the preliminary approval motion.

A hearing on the motion for preliminary approval was held on December 3, 2012, at which the Court questioned the Parties extensively about the terms of their Settlement Agreement.

### B. Overview of Settlement Terms

The complete provisions of the Settlement Agreement are spelled out in the Settlement Agreement itself, which is attached as Exhibit A to the Declaration of Peter M. Hart. (Docket No. 93.) Its key provisions are as follows.

<u>Class Definition and Size</u>

The Class is comprised of, "all persons employed by Defendant in California in a non-exempt position" at any time from February 25, 2005 through August 1, 2012. *Id.* ¶ 2.7. There are approximately 11,775 Class Members. *Id.* ¶ 2.9.

<u>Released Claims</u>

The Settlement Agreement provides that all Class Members other than those who opt out, shall release "any and all claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities of any nature and description whatsoever, that are based on or reasonably related to the claims asserted in the Complaints (and amended Complaints)" filed in *Gary Minor and Banipal Shabaz v. FedEx Office and Print Services, Inc.*, *Isachsen-Fraser v. FedEx Office and Print Services, Inc.*, *Kristy Seither v. FedEx Office and Print Services, Inc.*, *Narek Eloyman and Shehan Bederian v. FedEx Office and Print Services, Inc.*, and *Michael Macias v. FedEx Office and Print Services, Inc. Id.* ¶ 2.35.

<u>Gross and Net Settlement Amount</u>

The Settlement Agreement provides for a Gross Settlement Amount of up to $9,625,000. *Id.* ¶ 2.23. The Gross Settlement Amount includes: (1) Settlement Administration Costs, (2) attorneys' fees, (3) litigation costs, (4) Class Representatives'

3

Enhancement Payments, and (5) a Private Attorneys General Act ("PAGA") payment.[2] *Id.* The Net Settlement Amount, which is the amount available to pay claims filed by Class Members, is the remaining portion of the Gross Settlement Amount after deducting the listed items. *Id.* ¶ 2.24.

Settlement Administration Costs

The Settlement Agreement provides that all reasonable costs of the Claims Administrator, including the mailing of the Notice Packet, are to be paid from the Gross Settlement Amount. *Id*. ¶ 6.3.4.

Attorneys' Fees and Costs

The Settlement Agreement authorizes Class Counsel to apply to the Court for an award of attorneys' fees and litigation costs, which Defendant agrees not to oppose. *Id*. ¶ 6.6. The Settlement Agreement caps the amount of fees Class Counsel may seek at 25% of the Gross Settlement Amount, and caps the award of litigation costs at $125,000. *Id.*

Class Representative Enhancement Payment

The Settlement Agreement authorizes Plaintiff Gary Minor to seek an Enhancement Payment from the Gross Settlement Amount in the amount of either $15,000.00 (if Mr. Minor selects the Class Representatives' Limited Released Claims) or $25,000.00 (if he selects the Class Representatives' General Released Claims). *Id.* ¶ 6.7.1. The Settlement Agreement authorizes Banipal Shabaz, Narek Eloyan, Shehan Bederian and Michael Macias to seek an Enhancement Payment from the Gross Settlement Amount in the amount of $25,000.00 each, on the condition that they agree to release the Class Representatives' General Released Claims. *Id*.

---

[2]The Employers' Share of Payroll Taxes will be paid by Defendant separate from the Gross Settlement Amount unless claims do not exceed 45% of the Net Settlement Amount. *Id.* ¶ 6.10.4. If claims do not exceed 45%, the Employers' Share of Payroll Taxes may (to the extent available) be paid from the difference between 45% of the Net Settlement Amount and the amount actually claimed. *Id.*

4

PAGA Payment

The Settlement Agreement provides for a PAGA payment of $96,000.00 of which $72,000.00 will be paid to the California Labor and Workforce Development Agency, and the remaining $24,000.00 will be distributed to Class Members. *Id.* ¶ 2.28.

Allocation of the Net Settlement Amount

The Claim Amount of each individual Class Member will be determined by a point system according to the following formula. *Id.* ¶ 6.10.1. Each Class Member will be allocated one point for each workweek of active employment worked during the Class Period. *Id.* Each Class Member's total number of points will then be divided by the total number of points for all Class Members, and the resulting fraction will be multiplied by the Net Settlement Amount. *Id.*

Claims Procedure and Waiver

The Notice Packet shall provide Class Members with information as to how they may submit a claim for payment. *Id.* ¶ 6.4.1. To receive payment, a Class Member must timely submit a Claim Form by the Claim Period Deadline. *Id.* Class Members who fail to submit a valid and timely request for exclusion shall be bound by all terms of the Settlement Agreement and the Final Judgment entered in this Action. *Id.* ¶ 6.4.4.

Floor and Reversion

If Class Members do not collectively claim at least 45% of the Net Settlement Amount, then the shares of the settlement allocated to those Class Members who have timely submitted claims will be increased proportionally until at least 45% of the Net Settlement Amount is paid. *Id.* ¶ 6.10.2. If claims exceed 45% of the Net Settlement Agreement, then the actual amount claimed will be paid to Class Members who submitted claims. *Id.* The remainder, if any, of the Net Settlement Amount will be retained by Defendants. *Id.*

Defendant's Option to Void

Defendant has the option to void the Settlement Agreement if 5% or more of the total number of Class Members opt out. *Id.* ¶ 6.4.8.

5

**DISCUSSION**

## A. Preliminary Approval of the Settlement

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." A court's review of a class action settlement is, for the most part, "extremely limited." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Court considers the settlement as a whole and may not "delete, modify or substitute certain provisions." *Id.* (internal quotation marks and citation omitted). "The settlement must stand or fall in its entirety." *Id.*

The Court may grant preliminary approval of a settlement if the settlement: "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litigation,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citations omitted). Closer scrutiny is reserved for the final approval hearing.

The purpose of Rule 23(e)'s requirement that the court approve a class action settlement "is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). When, as in the present case, a settlement is reached prior to class certification, courts apply a high level of scrutiny in evaluating the fairness of the settlement. This is because "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011). Accordingly, courts examine such agreements carefully for evidence of collusion. *Id*. Signs of collision include: (1) "when counsel receive a disproportionate distribution of the settlement" *Id*. at 947; (2) when the parties negotiate an arrangement under which Defendants agree not to oppose an attorneys' fee award up to a certain amount, which is independent from the class's actual recovery, as such an arrangement carries "the potential of enabling a defendant to pay class counsel excessive fees

6

and costs in exchange for counsel accepting an unfair settlement on behalf of the class" *Id.*; (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund" *Id.*; *see also Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004); and (4) when Class Representatives receive an enhancement payment or service award that is much higher than the payments unnamed class members stand to receive from the settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003).

At the December 3, 2012 hearing, the Court expressed reservations about several aspects of the proposed Settlement Agreement and the fairness of the agreement as a whole. The Parties' presentations at oral argument alleviated, but did not eliminate, these concerns. Upon careful consideration, the Court concludes that the Settlement Agreement meets the criteria for preliminary approval; however, with respect to the three aspects of the Settlement Agreement discussed below, specific documentation will be necessary at the final approval stage. Additionally, counsel are reminded of their obligation under Federal Rule of Civil Procedure 23(e)(3) to "file a statement identifying any agreement made in connection with the proposal."[3]

**1. The Reversion to Defendants**

A claims process settlement coupled with a reversion of undistributed funds to the Defendants is not *per se* deficient. *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir.1990). However, settlement agreements containing reversionary clauses often raise concerns about whether the settlement is in the best interests of the class. In particular, without knowing the claim rate, it is not possible to calculate the actual value of the settlement, and therefore it is difficult to assess the proportionality between the settlement's value and Plaintiffs' expected recovery at trial, which is the single most important factor in determining whether the settlement is substantively fair and adequate. *In*

---

[3] As explained in the Committee Note to Rule 23(e), "[t]his provision does not change the basic requirement that the parties disclose all terms of the settlement or compromise that the court must approve under Rule 23(e)(1)." Fed. R. Civ. P. 23 advisory committee's note subdiv. e para. 2 (2003). "It aims instead at related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others. Doubts should be resolved in favor of identification." *Id.*

7

*re Tableware Antitrust Litig.*, 484 F. Supp. at 1080 ("To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer.").

At the preliminary approval hearing, counsel contended that the negotiated "floor," i.e., that Defendant must pay out to claimants at least 45% of the Net Settlement Amount, will protect the interest of absent Class Members, and counsel for both parties stated that the settlement would not have happened without the reversion and the 45% floor. Plaintiffs' counsel also argued that the per-claimant payments are reasonable in proportion to what Class Members would have received had the case gone to trial, and stated that they anticipate a relatively high claim rate. Based on these representations, the Court finds that the reversionary clause does not render the settlement inherently inadequate. To permit the Court to assess the adequacy of the Settlement Agreement at the Final Approval and Fairness Hearing, Plaintiffs' counsel must provide the Court with documentation relating to any damages analyses that were performed during the settlement process. In addition, Plaintiffs' counsel shall submit documentation of the actual number of timely claims submitted by Class Members.

**2. Attorneys' Fees Based on Common Fund**

When "the settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" of calculating attorneys' fees awards. *Bluetooth*, 654 F.3d at 942. In common-fund settlements, the Ninth Circuit has "allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar" when the "benefit to the class is easily quantified." *Id*. In such cases, 25% of the common fund is typically considered the benchmark for a reasonable fee award; courts departing from this benchmark generally provide an explanation on the record for doing so. *Six (6) Mexican Workers*, 904 F.2d at 1311.

At the Preliminary Approval hearing, Class Counsel contended that their attorneys' fees request is reasonable, both based on their lodestar and as a percentage of the recovery. While counsel's request represents the benchmark in the Ninth Circuit, a below-benchmark

8

fee award may be appropriate in this case based on the early stage of proceedings at which this case settled, particularly if the claim rate, and correspondingly, Class Members' actual recovery, is low. If only the floor of 45% of the Net Settlement Amount is paid out, Class Members will receive approximately 30% of the Gross Settlement amount; in that case, the requested attorneys' fees award of 25% of the Gross Settlement Amount (approximately 5/6 of the attorneys' fees award) would appear to be inflated as compared to the actual benefit to the Class. Heightened scrutiny for collusion is warranted when defendants agree not to oppose a request for attorneys' fees in connection with a settlement agreement with a reversionary clause, which may render the gross settlement amount illusory. *See Bluetooth*, 654 F.3d at 947. The Court's conclusion that the request falls within the range of possible final approval is based in part on Class Counsel's representation at oral argument that their lodestar multiplier was approximately one (1). In support of their request for attorneys' fees and costs and their Final Approval Motion, Class Counsel must provide a lodestar report to permit the Court to perform a cross check. The report must include specifics as to what work was completed when and by whom and hourly rates for each person who worked on the case.

### 3. High Enhancement Payments for Class Representatives

Reasonable enhancement payments are permissible, and whether, and how much, to reward Class Representatives for their efforts is within the Court's sound discretion. *See Staton*, 327 F.3d at 977; *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–69 (9th Cir. 2009). In determining whether to award an enhancement payment to each individual class representative, courts consider: (1) "the actions the plaintiff has taken to protect the interests of the class," (2) "the degree to which the class has benefitted from those actions," (3) "the amount of time and effort the plaintiff expended in pursuing the litigation," and (4) "reasonable fear of workplace retaliation." *Staton*, 327 F.3d at 977 (internal quotation marks and citation omitted).

A request for an enhancement payment that is much higher than the benefit class members may expect to receive from the settlement creates the risk that class representatives will sell the interests of the class down the river. The Court is particularly alert to this

9

1  possibility in the present case, since Gary Minor and Banipal Shabaz initially refused to sign
2  the Settlement Agreement. However, the fact that final approval of the Settlement
3  Agreement is not contingent on approval of the requested Enhancement Payments diminishes
4  the Court's concern about the magnitude of the requested Enhancement Payments in
5  comparison to the payments to unnamed Class Members. Because the Court has the
6  discretion to reduce the requested Enhancement Payments, their apparent inflation does not
7  substantially impact the Court's determination whether the Settlement Agreement as a whole
8  is within the realm of possible final approval.

9  Moreover, the Court may well find that the requested Enhancement Payments are
10 reasonable. In support of preliminary approval, Plaintiffs' counsel argued that Enhancement
11 Payments of $25,000.00 are justified because the Class Representatives spent significant time
12 and effort volunteering to help the Class, have agreed to provide a full release of their claims
13 as opposed to the limited one provided by absent Class Members, took on financial risk due
14 to a two-way attorneys' fees provision, and took the risk that their public participation in the
15 lawsuit could have a negative impact on their future employment prospects. A strong
16 showing of the above factors in connection with Plaintiffs' request for Enhancement
17 Payments and Final Approval motion may justify the requested awards. Accordingly, in
18 support of their request for Enhancement Payments, Class Counsel shall provide a
19 declaration from each Class Representative that answers each of the following questions:

20     1. Are you a current or former employee of FedEx?
21     2. If former, how have you been employed since ending employment
22        with FedEx? Are you currently employed, and if so, what is your
23        occupation?
24     3. What risks did you face as a named plaintiff to this suit, both financial
25        and otherwise?
26     4. Did you experience notoriety and/or personal difficulties because you
27        were a named plaintiff in this suit? If so, explain your experience(s).
28     5. Specify the activities you performed as a named plaintiff.

      6.     Specify the amount of time you spent on each activity your performed as a named plaintiff.

      7.     Why do you believe settlement is good for the class?

**CONCLUSION**

For the reasons discussed above, IT IS HEREBY ORDERED THAT:

1. The Court finds that the Settlement Agreement falls within the range of possible approval, and preliminarily approves it as fair, adequate, and reasonable, subject to further consideration at the Final Approval and Fairness Hearing. The Settlement Agreement appears to be the product of serious, informed, non-collusive negotiations.

2. The Court preliminary finds, for settlement purposes only, that the Class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure. The Court hereby conditionally certifies the following settlement class: "All persons employed by Defendant in California in a non-exempt position at any time between February 25, 2005 through August 1, 2012." As set forth in the Settlement Agreement, "Defendant" means FedEx Office and Print Services, Inc.

3. The following individuals shall serve as the Class Representatives: Gary Minor, Banipal Shabaz, Narek Eloyan, Shehan Bederian, and Michael Macias.

4. Having considered the factors set forth in Federal Rule of Civil Procedure 23(g), the Court appoints as counsel for the Class: Peter M. Hart, Law Offices of Peter M. Hart, 12121 Wilshire Blvd., Suite 205, Los Angeles, California, 90025; Kenneth H. Yoon, Law Offices of Kenneth H. Yoon, One Wilshire Blvd., Suite 2200, Los Angeles, California, 90017; Eric Honig, Law Office of Eric Honig, P.O. Box 10327, Marina del Rey, California, 90294; Levik Yarian and Allen Patatanyan, Yarian & Patatanyan, LLP, 1511 W. Glenoaks Blvd., Glendale, California, 91202; Michael Gould, Gould & Associates, 18722 East 17th St., Suite 106, Tustin, California, 92780. Each attorney has demonstrated to the satisfaction of the Court that he is experienced in class action litigation and will adequately represent the interests of all Class Members.

11

5. The Court finds that the dissemination of the Notice Packet, as directed by this order, constitutes the best notice practicable under the circumstances. The Court approves, as to form and content, the proposed Notice Packet form attached as Exhibit A-1 and Exhibit A-2 to the Settlement Agreement, except that the Claim Form shall be a one-sided, single-page form, and the following corrections shall be made to the Notice of Settlement:

    a. On page 1, in top box, add the date "August 1, 2012"

    b. On page 1, in the second box, in section "Submit a Claim Form," edit sentence to state: "Give up certain rights, explained below."

    c. On page 1, in the second box, in section "Exclude Yourself" edit sentence to state: "Waive all rights, including the right to money from the settlement."

    d. On page 1, in the second box, in section "Object" add: "If you object, you may still submit a claim form and receive payment from the settlement."

    e. On page 1, under section "1. Why Did I Get This Notice Package" edit sentence to state: "FedEx Office's records show that you worked for FedEx Office as a non-exempt (paid by the hour) employee in California during the period from February 25, 2005 to August 1, 2012."

    f. On page 4, under section "11. When would I get my payment?" change courtroom number to 2.

    g. On page 6, under section "14. When is the Final Approval Hearing?" change courtroom number to 2.

    h. On page 8, under section "15. How Do I Object to the Settlement and Appear at the Final Approval Hearing?" change "Case No. C09-01375 THE" to "Case No. C09-01375 TEH."

In addition to the above corrections, the Court authorizes the Parties to make minor, non-substantive revisions to the Notice Packet as they may jointly deem necessary or appropriate, and also to insert dates and deadlines consistent with this Order, without

1 necessity of further Court action or approval. The Notice Packet shall be sent to all Class
2 Members, together with a return envelope, on the date and in the manner specified below.

3       6.       The Court hereby appoints CPT Group, Inc. as Settlement Administrator.
4 Reasonable costs of settlement claims administration, including mailing of the Notice
5 Packets, shall be paid from the Gross Settlement Amount.

6       7.       Within the time frame set forth below, FedEx Office and Print Services, Inc.
7 Shall provide the Settlement Administrator and Class Counsel information about Class
8 Members, as specified in the Settlement Agreement.

9       8.       Any Class Member who wishes to be excluded from the Class must make a
10 written request for exclusion in compliance with the instructions contained in the Settlement
11 Agreement and the Notice Packet. Any request for exclusion must be returned postmarked
12 on or before the date specified below. All persons who properly submit a request for
13 exclusion shall not be settlement Class Members and shall have no standing to appear at the
14 Final Approval and Fairness Hearing.

15       9.       Any member of the Class to whom a Notice Packet was mailed who does not
16 timely request exclusion and who objects to approval of the proposed settlement in
17 compliance with the requirements set out in the Settlement Agreement and the Notice Packet
18 may appear at the Final Approval and Fairness Hearing in person or through counsel to show
19 cause why the proposed settlement should not be approved as fair, reasonable, and adequate.
20 Specifically, Class Members or their counsel may object to the settlement and entry of the
21 Final Judgment approving the settlement, the application of Class Counsel to the Court for
22 approval of attorneys' fees and costs and/or of entry of an order approving such application,
23 and any application by the Class Representatives for an Enhancement Payment in connection
24 with the prosecution of this Action. An objection will be heard and considered by the Court
25 only if, on or before the date set forth below, the Class Member making the objection has
26 filed with the Court and served on the Parties notice of his or her intention to appear, along
27 with copies of all papers in support of his or her position, which must clearly set forth each
28 objection and the basis for such objection, as specified in the Settlement Agreement. Any

1 member of the Class who does not make his or her objection to the settlement in the manner
2 provided in the Settlement Agreement shall be barred form appearing at the Final Approval
3 and Fairness Hearing and deemed to have waived such objection for purposes of appeal,
4 collateral attack, or otherwise, except by special permission of the Court.

5     10. Any Class Member who does not request exclusion by the date given below
6 will be bound by the Settlement Agreement.

7     11. The Final Approval and Fairness Hearing will be held on June 17, 2013, at
8 10:00 AM in Courtroom 2. The Court may adjourn or continue the date of the Final
9 Approval and Fairness Hearing without further notice to the Class.

10     12. The dates of performance of this Order are as follows:

    a. No later than 20 business days after the date of the entry of this order, FedEx Office and Print Services, Inc. shall provide the Claims Administrator with the name, last known address, last known telephone number, and start and end dates of employment for each Class Member.

    b. Dissemination of the Notice Packet to each Class Member by first class United States mail shall be completed no later than 10 business days after receipt of the above-specified information from FedEx Office and Print Services, Inc.

    c. Requests for exclusion from the Class must be returned postmarked no later than 45 calendar days after the initial mailing of the Notice Packet. The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted.

    d. Objections to the settlement, requests for intervention, and notices of intention to appear at the Final Approval and Fairness Hearing shall be deemed timely only if filed with the Court and served on the Parties no later than 45 calendar days after the initial mailing of the Notice Packet.

    e. Class Counsel's motion for attorneys' fees and costs, and Class

14

                Representatives' applications for Enhancement Payments shall be filed with the Court on or before May 13, 2013. Copies shall be served on Class Counsel of record and on all other persons who have filed a notice of their intention to appear at the Final Approval and Fairness Hearing by first class mail.

      f.     Class Counsel shall file their papers in support of final approval of the settlement on or before May 13, 2013. Copies of all such papers shall be served on current counsel of record and on all other individuals who have filed a notice of their intention to appear at the Final Approval and Fairness Hearing by first class mail.

      g.     Any opposition by Class Members to the settlement itself, counsel's motion for attorney fees and costs, or Class Representatives' applications for Enhancement Payment awards shall be filed on or before May 27, 2013.

      h.     Any reply to the opposition to the settlement itself, counsel's motion for attorneys' fees and costs, or Class Representatives' applications for Enhancement Payment awards shall be filed on or before June 3, 2013 and served on counsel of record and those Class Members who file opposition papers with the Court.

13. It is further ordered that pending further order of this Court, all proceedings in this matter except those contemplated herein and as part of the Settlement Agreement are stayed.

14. Jurisdiction is hereby retained over this Action and the Parties to the Action, and each of the Class Members for all matters relating to this Action, this Settlement, including (without limitation) all matters relating to the administration, interpretation, effectuation, and/or enforcement of the Settlement Agreement and this Order.

1 **IT IS SO ORDERED.**

Dated: 2/8/2013

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT